55943, 55944. MERRITT et al. v. DEPARTMENT OF TRANSPORTATION; and vice versa.

BANKE, Judge.

The Department of Transportation filed this condemnation proceeding to acquire 13.563 acres of land from the condemnees for highway construction purposes. The condemnees were left with remainders totaling 141 acres, which were located at and near an interchange corner. The department paid $37,260 into the registry of the court as its assessment of just and adequate compensation, and the condemnees appealed to a jury alleging this valuation to be inadequate.

The department presented two expert witnesses on the question of value. One testified that the property was worth $39,265 at the time of the taking and the other that it was worth $40,680. Condemnee James Merritt, on the other hand, testified that the land was worth $122,067, the equivalent of $9,000 per acre. He admitted that three months prior to the taking, he and his mother had purchased a one-third interest in the property from the heirs of their deceased sister/daughter for $900 per acre, or the equivalent of $2,700 per acre for the entire interest. He explained that this price reflected the assumption of certain indebtedness for which his father's heirs shared liability.

The condemnees also presented two expert value witnesses, who testified that the land was worth between $7,500 and $8,000 per acre, or between $101,250 and $108,000 for the 13.563 acres taken.

The condemnees did not allege or seek consequential damages to the remainder of the property.

The jury awarded the condemnees $40,689 as the value of the land taken and recommended that attorney fees, but not witness fees, also be awarded. The trial court accordingly awarded attorney fees in the amount of $1,143, which equals one-third the difference between the amount initially paid into court and the award of the jury.

1. Over the condemnees' objections, the department was allowed to introduce evidence, including photographic exhibits, showing that the county road

frontage remaining to the condemnees after the taking was just as extensive as the frontage previously existing. Also, one of the department's experts was allowed to testify that the remaining frontage was more valuable than the frontage taken. Furthermore, the department was allowed to submit evidence of the size and location of the remainders and to show that they were located at and near proposed interchange corners. The condemnees contend that the admission of all this evidence was error because it allowed the state to prove consequential benefits when there was no evidence and no issue of any consequential damage to the remainders.

The law is clear that consequential benefits to remaining lands may be shown only as an offset against consequential damages and that they may not be used as an offset against the value of the land actually taken. See Code §§ 36-504, 36-506; *Fulton County v. Power,* 109 Ga. App. 783 (3) (a) (137 SE2d 474) (1964); *Dept. of Transportation v. Knight,* 143 Ga. App. 748 (4) (240 SE2d 90) (1977).

Although the evidence complained of in this case did tend to establish that the condemnees' remaining property had benefited from the taking, the trial judge was scrupulous to prevent any witness from attaching a monetary value to this benefit, and the jury was instructed unambiguously that the only element to be considered in assessing damages was the market value of the property actually taken. The evidence in controversy was relevant to a determination of the value of the land taken since it showed the nature and extent of the access rights which were lost (apparently none) and helped to locate the lands taken in relation to the remainder. Furthermore, it is clear from condemnee James Merritt's testimony that the proximity of the property to a proposed interchange corner was a factor he himself had considered in arriving at his own estimate of the property's worth. For these reasons, we hold that the trial court did not err in allowing the evidence, despite its tendency to show that the remainders were benefited by some unspecified amount.

2. It was not error to exclude testimony by condemnee James Merritt concerning two unaccepted

offers to purchase which he had received prior to the taking. This testimony was offered by Mr. Merritt as partial support for his opinion that the property was worth $9,000 per acre.

Although unaccepted offers to purchase do not in and of themselves constitute evidence of market value, the general rule is that they are admissible where offered as partial basis for opinion testimony as to value. See *Sutton v. State Hwy. Dept.,* 103 Ga. App. 29 (4) (118 SE2d 285) (1961); *State Hwy. Dept. v. Whiddon,* 109 Ga. App. 744, 745 (137 SE2d 377) (1964). See also *Groover v. Simmons,* 161 Ga. 93 (6) (129 SE 778) (1925); *Jones v. Smith,* 206 Ga. 162 (6) (56 SE2d 462) (1949); *Southwell v. State Hwy. Dept.,* 104 Ga. App. 479 (1) (122 SE2d 131) (1961); *State Hwy. Dept. v. Parker,* 114 Ga. App. 270, 274 (150 SE2d 875) (1966). Cf. *Atlanta Warehouses v. Housing Authority of Atlanta,* 143 Ga. App. 588 (239 SE2d 387) (1977). In this case, however, one of the offers to purchase excluded on its face the property to be taken by the department and thus constituted merely an offer to purchase the remainder. Consequently, any reference to it was properly excluded. The other offer, while it did include the property to be taken by the department, appears to have been nothing more than a mere oral expression of willingness to purchase, unaccompanied by any proposed terms, any indication of ability to perform, or anything else which might indicate that it was a serious and bona fide offer. Such "offers" are too susceptible of fabrication to be allowed into evidence even as a partial basis of opinion testimony. Cf. *Southern R. Co. v. Miller,* 94 Ga. App. 701 (2), 706 (96 SE2d 297) (1956). Therefore, the trial judge did not err in excluding from evidence testimony regarding the second offer, either.

3. One of the condemnees' expert value witnesses testified that, based on his general experience as a real estate agent and his knowledge of land values in the county, he believed the land taken to be worth from $7,500 to $8,000 per acre "for investment purposes for enhancement in value." Outside the presence of the jury, the department obtained a statement from this witness that the "primary reason" for his opinion was actually his knowledge of eight "comparable" sales rather than simply

his general experience in the real estate market. The trial judge determined that three of these eight sales were in fact of noncomparable properties, brought the jurors back in, and instructed them not to consider the witness' testimony up to that point because it had been "based upon an erroneous basis." Although the witness was later allowed to repeat his opinion of the value of the land, the condemnees urge that by virtue of the trial court's ruling, the witness' testimony had already been, in effect, impeached by the trial court.

The cases are in conflict as to whether the trial court can refuse to admit expert value testimony where that testimony is based upon sales determined to be noncomparable. According to one line of cases, whether or not the property is sufficiently similar and the sales sufficiently close in time are matters which the jury may consider in evaluating the credibility of the expert and of his opinion, but they do not affect the admissibility of the evidence. See *Clemones v. Ala. Power Co.,* 107 Ga. App. 489 (2) (130 SE2d 600) (1963); *Hollywood &c. Church v. State Hwy. Dept.,* 114 Ga. App. 98 (4) (150 SE2d 271) (1966); *Slenker v. Dept. of Transportation,* 141 Ga. App. 504 (1) (233 SE2d 871) (1977). According to another line of cases, it is within the province of the trial judge to determine whether "the testimony of value is based (in whole or in part) upon sales which are not comparable" and, if so, to disallow it. *Southern Natural Gas Co. v. Waters,* 124 Ga. App. 45, 46 (183 SE2d 45) (1971); *Weaver v. Ga. Power Co.,* 134 Ga. App. 696 (3) (215 SE2d 503) (1975). We believe that this conflict has been resolved by *White v. Ga. Power Co.,* 237 Ga. 341 (3), 345-346 (227 SE2d 385) (1976), wherein the Georgia Supreme Court cited with approval the language in *Hollywood &c. Church v. State Hwy. Dept.,* supra, holding that the comparability of the sales upon which an expert value witness bases his opinion goes to the weight to be given his testimony, not its admissibility. Therefore, the trial court was in error in ruling out the testimony of the condemnees' expert for the reason assigned.

However, this witness' testimony was inadmissible for another reason, discussed below, and thus the trial court's ruling affords no ground for reversal. "If testimony

was properly rejected, the ruling of the court will be sustained, although he may have given an insufficient, or even a wrong reason therefor." *Smith v. Page,* 72 Ga. 539 (2) (a) (1884).

Although an expert value witness may state his opinion of value without giving reasons therefor (see *Hollywood &c. Church v. State Hwy. Dept.,* supra; *State Hwy. Dept. v. Howard,* 119 Ga. App. 298 (167 SE2d 177) (1969)), where he does give reasons and those reasons appear to be wholly speculative or conjectural, his opinion is without foundation and without probative value. See *Bankers Health & Life Ins. Co. v. Fryhofer,* 114 Ga. App. 107 (2), 112 (150 SE2d 365) (1966) and cases cited therein. The witness' testimony that the land was worth from $7,500 to $8,000 per acre for "investment purposes for enhancement in value" was such an opinion. It appears on its face to have been purely speculative; and, absent some form of articulable support for it, the court did not err in striking it.

4. The trial court did not err in charging the jury that a sale of property by a guardian on behalf of his minor wards is presumed to be in the best interests of the wards and that such sales are required to be consummated under the supervision and direction of the probate court. The charge was a correct statement of law. See Code §§ 49-203, 49-204. The evidence showed that condemnees James Merritt and his mother, Violet Merritt, purchased a one-third interest in the property from the heirs of their deceased sister/daughter, some of whom were minor children. The other two-thirds interest was already in these two condemnees, who had inherited it from the father/husband. The purchase of the remaining one-third interest occurred just three months prior to the condemnation; and, although the purchase price apparently included credits for some debts of the deceased father/husband which the condemnees had assumed, the price which they paid was relevant to a determination of the property's value. Since the charge was both a correct statement of law and adjusted to the evidence, it was not error to give it.

5. In view of the fact that the verdict exceeded the amount which the department had deposited into court as

compensation for the property, we cannot say as a matter of law that an award of attorney fees was unauthorized in this case. See *Dept. of Transportation v. Flint River Cotton Mills,* 238 Ga. 717 (235 SE2d 31) (1977); *Ga. Power Co. v. Whitmire,* 146 Ga. App. 29, 33 (245 SE2d 324) (1978). See also *Dept. of Transportation v. Doss,* 238 Ga. 480 (233 SE2d 144) (1977). As for the *amount* of attorney fees awarded, the condemnees' attorney testified that he had a total of 65 hours in the case and described in detail the services rendered. "[I]n the absence of specific Supreme Court of Georgia guidelines for determination of the amount of attorney fees allowable in an eminent domain proceeding, and in view of the nonexistence of Georgia statutory law concerning attorney fees allowable in such cases, and further in view of the Supreme Court's holding in *Reserve Life Ins. Co. v. Gay,* 214 Ga. 2, 3 (102 SE2d 492), that appellate courts are without authority to fix compensation of an attorney in any case, we are . . . bound by the 'any evidence rule' in the case sub judice." *DeKalb Co. v. Trustees &c. Elks,* 145 Ga. App. 180, 182 (243 SE2d 284) (1978). See *Dept. of Transportation v. Doss,* 238 Ga. 480, supra, at 484.

*Judgment affirmed. Deen, P. J., and Smith, J., concur.*

55943, Submitted June 5, 1978 — 55944, Argued June 5, 1978 — Decided September 11, 1978 — Rehearing denied September 28, 1978 — 

. *Boling & Rice, Leon Boling, Larry H. Boling,* for appellants.

*Arthur K. Bolton, Attorney General, William C. Joy, Assistant Attorney General,* for appellee.