**HARTFORD FIRE INSURANCE CO., Plaintiff,**

v.

**FIRST NATIONAL BANK OF ATMORE, et al., Defendants.**

**No. CIV.A. 00–0127–S.**

United States District Court, S.D. Alabama, Southern Division.

March 18, 2002.

Michael S. Jackson, Beers, Anderson, Jackson, Hughes & Patty, P.C., Montgomery, AL, for plaintiff.

W. Pemble DeLashmet, Goodman G. Ledyard, C. William Daniels, Jr., W. Perry Hall, Pierce, Ledyard, Latta, Wasden & Bowron, P.C., Mobile, AL, Reo Kirkland, Jr., Brewton, AL, for defendants.

**ORDER**

STEELE, United States Magistrate Judge.

This matter is before the Court on the motion of plaintiff Hartford Fire Insurance Co. ("Hartford") to strike the defendants' jury demand regarding their claim for punitive damages under their counterclaim for bad faith. (Doc. 120). The defendants have opposed Hartford's motion. (Doc. 124). After carefully considering the parties' positions, the Court concludes that Hartford's motion is due to be denied.

**BACKGROUND**

On March 16, 2000, the defendants filed a counterclaim for breach of contract and bad faith, seeking an award of punitive damages in connection with the bad faith claim and demanding trial by jury. (Doc.

9 at 9). Hartford did not move to strike the defendants' jury demand or otherwise object to trial by jury concerning punitive damages.

On May 14, 2001, the Supreme Court handed down its decision in *Cooper Industries, Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424, 121 S.Ct. 1678, 149 L.Ed.2d 674 (2001), which Hartford reads as precluding trial by jury with respect to punitive damages. Hartford nevertheless did not move to strike the defendants' demand for a jury trial as to punitive damages. On the contrary, on January 14, 2002 the parties submitted their proposed joint pretrial order, in which Hartford denied the defendants' right to trial by jury only with respect to Hartford's declaratory judgment action, which does not implicate any punitive damages issue. (Joint Pretrial Order at 19). On January 23, 2002, Hartford filed its motion to strike. (Doc. 120).

In other contexts, Hartford's delay would of itself support the denial of its motion to strike. *See, e.g., Daniel International Corp. v. Fischbach & Moore, Inc.*, 916 F.2d 1061, 1064–65 (5th Cir.1990)(the plaintiff's jury demand, though untimely, was improperly stricken in light of the defendant's delay in moving to strike); *United States v. 79.36 Acres of Land*, 1991 WL 275355 at *2–3 (9th Cir.1991)(similar). However, because Hartford argues that no right to jury trial exists to begin with, the Court will consider the merits of Hartford's motion despite its unexplained tardiness. *See United States v. Schoenborn*, 860 F.2d 1448, 1455 (8th Cir.1988) (where the defendant conceded that he had no constitutional or statutory right to a jury trial, the trial court did not abuse its discretion by granting the plaintiff's belated motion to strike).

## ANALYSIS

In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury shall be otherwise re-examined in any court of the United States, than according to the rules of the common law. U.S. Const. amend. VII. The Seventh Amendment is thus comprised of two distinct components: the "trial by jury" clause and the "re-examination" clause. *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 432, 116 S.Ct. 2211, 135 L.Ed.2d 659 (1996).

In *Cooper Industries*, the Supreme Court considered the re-examination clause, in particular, whether and to what degree a federal appellate court may review a district court's determination that a jury's award of punitive damages does or does not pass constitutional muster. Because only a "fact" tried to a jury is subject to the re-examination clause, a critical question was whether the amount of punitive damages constitutes such a "fact." Adopting Justice Scalia's view, the Court concluded that, " '[u]nlike the measure of actual damages suffered, which presents a question of historical or predictive fact, [citation omitted], the level of punitive damages is not really a "fact" "tried" by the jury.' " 532 U.S. at 437, 121 S.Ct. 1678 (quoting *Gasperini v. Center for Humanities*, 518 U.S. at 459, 116 S.Ct. 2211 (Scalia, J., dissenting)).

Seizing on this language, Hartford argues that "punitive damages involve the application of law to the facts, which is a function of the trial court, not the jury." (Doc. 120 at 3).[1] Hartford cites no federal authority for its position other than *Cooper*

---

1. By its terms, *Cooper Industries* held only that the *amount* of punitive damages is not a "fact" within the re-examination clause. Hartford's sub silentio effort to expand the reach of *Cooper Industries* to other aspects of punitive damages is facially unsupportable and will be ignored.

*Industries.*[2]  As discussed below, *Cooper Industries* does not support Hartford's position.[3]

The threshold and fatal flaw in Hartford's argument is its assumption that the right-to-jury clause at issue ·here, like the re-examination clause at issue in *Cooper Industries,* is limited in its scope to historical or predictive "facts."  The purpose of the right-to-jury clause, however, is to identify the universe of disputes as to which the right to a jury attaches in the first instance (*i.e.,* "suits at common law"); the very different purpose of the re-examination clause, in contrast, is to identify the subset of matters tried to a jury as to which judicial review is limited (*i.e.,* "fact[s]").

■  Whether the right to trial by jury attaches under the first clause of the Seventh Amendment does not depend on whether a "fact" is involved but on whether a "sui[t] at common law" is involved.  Under standard Seventh Amendment jurisprudence, this inquiry requires a two-step approach.  First, the Court determines whether the cause of action is the same as, or at least analogous to, a cause of action that was considered legal (as opposed to equitable) in late .18th century English law.  *City of Monterey v. Del Monte Dunes, Ltd.,* 526 U.S. 687, 708, 119 S.Ct. 1624, 143 L.Ed.2d 882 (1999).[4]

Assuming that the cause of action as a whole triggers the right to trial by jury under the Seventh Amendment, " 'we then must ask whether the particular trial decision must fall to the jury in order to preserve the substance of the common-law right as it existed in 1791.' "  *City of Monterey v. Del Monte Dunes,* 526 U.S. at 708, 119 S.Ct. 1624 (quoting *Markman v. Westview Instruments, Inc.,* 517 U.S. 370, 376, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996)).  As with the first inquiry, this requires a historical assessment of "whether the particular issues [embedded within the cause of action], or analogous ones, were decided by judge or jury in suits at common law at the time the Seventh Amendment was adopted." *Id.* at 718, 119 S.Ct. 1624.  If the historical record is plain, that is the end of the matter, but "where history does not provide a clear answer, we look to precedent and functional considerations."  *Id.*

2.  The Alabama case cited by Hartford simply adopts the appellate standard of review expressed in *Cooper Industries* for use in Alabama courts.  It says nothing whatsoever with respect to the reach of the Seventh Amendment and therefore is of no aid to Hartford.

3.  The Court's subject matter jurisdiction is based exclusively on diversity of citizenship.  Since it is clear that Alabama juries routinely decide the amount of punitive damages to be awarded under Alabama law, the defendants' right to a jury trial on this issue would be established independently of the Seventh Amendment if state law controlled the right to a jury trial in diversity actions.  However, to uphold "the uniformity in [the] exercise [of the right to trial by jury] which is demanded by the Seventh Amendment," the Supreme Court has held "that the right to a jury trial in the federal courts is to be determined as a matter of federal law in diversity as well as other actions." *Simler v. Conner,* 372 U.S. 221, 222, 83 S.Ct. 609, 9 L.Ed.2d 691 (1963).  While this rule often provides a federal litigant a jury trial to which he would not be entitled under state law, it applies even when the result is to deny the federal litigant a jury trial on an issue as to which state law would provide a right to jury.  *See Ford v. Citizens & Southern National Bank,* 928 F.2d 1118, 1121 (11th Cir.1991); *Columbus Mills, Inc. v. Freeland,* 918 F.2d 1575, 1578 & n. 2 (11th Cir. 1990); *Curtis Publishing Co. v. Butts,* 351 F.2d 702, 731 n. 43 (5th Cir.1965)(Rives, J., dissenting), *aff'd,* 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967).

4.  There is no question that the defendants' counterclaim for bad faith, which sounds in tort and which seeks the recovery of legal damages, both compensatory and punitive, satisfies this test.  *See, e.g., Curtis v. Loether,* 415 U.S. 189, 195–96, 94 S.Ct. 1005, 39 L.Ed.2d 260 (1974).

Thus, whether the right to trial by jury attaches to a particular issue depends on whether the issue was historically decided by juries, not on whether it constitutes a "fact."[5] Hartford's assertion that punitive damages "involve the application of law to the facts," (Doc. 120 at 3), even if accurate, is therefore unavailing.

The *Cooper Industries* Court itself recognized that its analysis of the re-examination clause could not be transferred to the right-to-jury context. Confronted with Supreme Court cases acknowledging the jury's role in determining the amount of punitive damages, the Court emphasized that it was considering only the re-examination clause, which must be "distinguish[ed]" from the right-to-jury clause. 532 U.S. at 437 n. 11, 121 S.Ct. 1678.

In short, *Cooper Industries* in no way supports Hartford's attempt to deprive the defendants of a jury trial as to the amount of punitive damages. *See also Todd v. Roadway Express, Inc.,* 178 F.Supp.2d 1244, 1245–46 (M.D.Ala.2001)(rejecting a similar argument because *Cooper Industries* concerned only the re-examination clause).

■ As discussed above, in order to demonstrate that the defendants are not entitled to a jury trial as to the amount of

punitive damages, Hartford would have to establish either that late 18th century jurisprudence assigned to judges the task of deciding the amount of punitive damages or that history is unclear and that precedent and functional considerations reflect that the issue should be decided by judges. Hartford has not even advanced such an argument, much less supported it. Accordingly, Hartford's motion to strike is due to be denied.

Even had Hartford challenged the defendants' right to a jury trial using the correct Seventh Amendment analysis, its challenge would not succeed, because the amount of punitive damages was an issue committed to the jury on both sides of the Atlantic in the late 18th century. *See Coryell v. Colbaugh,* 1 N.J.L. 77, 1791 WL 380 (1791); *Genay v. Norris,* 1 S.C.L. 6, 1784 WL 26 (1784); *Wilkes v. Wood,* Lofft 1, 98 Eng. Rep. 489 (1763); *Huckle v. Money,* 95 Eng. Rep. 768, 1763 WL 32 (C.P.1763).[6]

The Supreme Court, relying on this history, recently held that the Seventh Amendment requires a jury to determine the amount of statutory damages—which serve the dual purposes of "compensation and punishment"—to be awarded under the Copyright Act of 1976. *Feltner v. Columbia Pictures Television, Inc.,* 523 U.S. 340, 352–54, 118 S.Ct. 1279, 140 L.Ed.2d 438 (1998).[7] Even prior to *Felt-*

---

5. The isolated comment in *In re Peterson,* 253 U.S. 300, 310, 40 S.Ct. 543, 64 L.Ed. 919 (1920), that "[n]o one is entitled in a civil case to trial by jury, unless and except so far as there are issues of fact to be determined," is not controlling. As the Supreme Court later clarified, historical comparison is a "sounder course" for identifying those issues to be decided by the jury than is *Peterson's* fact/law distinction. *Markman v. Westview Instruments,* 517 U.S. at 378, 116 S.Ct. 1384. The fact/law boundary becomes relevant only when functional considerations must be considered due to the absence of clear historical evidence. *See id.* at 385, 388, 116 S.Ct. 1384; *City of Monterey v. Del Monte Dunes,* 526 U.S. at 718, 720, 119 S.Ct. 1624.

6. The salient points of these cases are discussed in *Feltner v. Columbia Pictures Television, Inc.,* 523 U.S. 340, 353, 118 S.Ct. 1279, 140 L.Ed.2d 438 (1998); *Honda Motor Co., Ltd. v. Oberg,* 512 U.S. 415, 421, 114 S.Ct. 2331, 129 L.Ed.2d 336 (1994); and Alan Howard Scheiner, *Judicial Assessment of Punitive Damages, the Seventh Amendment, and the Politics of Jury Power,* 91 Colum. L.Rev. 142, 156–57, 163 n. 106 (1991).

7. In contrast, while a suit for a civil penalty payable to the government affords a right to trial by jury, the determination of the amount of the civil penalty is for the court rather than the jury because "we were presented with no

ner, the Supreme Court recognized that, "[u]nder the traditional common-law approach, the amount of the punitive award is initially determined by a jury ...." *Pacific Mutual Life Insurance Co. v. Haslip*, 499 U.S. 1, 15, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991). The *Haslip* Court relied for this proposition on *Day v. Woodworth*, 13 How. 363, 14 L.Ed. 181 (1851), which confirmed that "repeated judicial decisions *for more than a century*" establish that "a jury may inflict" punitive damages and that "[t]his has been *always* left to the discretion of the jury, as the degree of punishment to be thus inflicted must depend on the peculiar circumstances of each case." *Id.* at 371 (emphasis added).

In addition to the Supreme Court cases cited above, the Courts of Appeal—including the Eleventh and the old Fifth—have uniformly recognized that the Seventh Amendment requires that the amount of punitive damages be set by the jury. *See, e.g., Vasbinder v. Scott*, 976 F.2d 118, 122 (2nd Cir.1992); *Klinger v. State Farm Mutual Automobile Insurance Co.*, 115 F.3d 230, 235–36 (3rd Cir.1997); *Defender Industries, Inc. v. Northwestern Mutual Life Insurance Co.*, 938 F.2d 502, 507 (4th Cir.1991)(en banc); *Adams v. Ford Motor Credit Co.*, 556 F.2d 737, 739 (5th Cir. 1977); *Lebow v. American Trans Air, Inc.*, 86 F.3d 661, 669 (7th Cir.1996); *Thorne v. Welk Investment, Inc.*, 197 F.3d 1205, 1210 (8th Cir.1999); *Morgan v. Woessner*, 997 F.2d 1244, 1258–59 (9th Cir.1993), *cert. dismissed*, 510 U.S. 1033, 114 S.Ct. 671, 126 L.Ed.2d 640 (1994); *O'Gilvie v. International Playtex, Inc.*, 821 F.2d 1438, 1447 (10th Cir.1987), *cert. denied*, 486 U.S. 1032, 108 S.Ct. 2014, 100 L.Ed.2d 601 (1988); *Johansen v. Combustion Engineering, Inc.*, 170 F.3d 1320, 1329 (11th Cir.), *cert.*

denied, 528 U.S. 931, 120 S.Ct. 329, 145 L.Ed.2d 256 (1999).

Because history proves, and precedent confirms, that the right to trial by jury attaches to the determination of the amount of punitive damages, it is irrelevant whether functional considerations also weigh in favor of the jury. In fact, however, these considerations also point toward the jury as the appropriate decisionmaker.

Functional considerations assess whether, " 'as a matter of the sound administration of justice, one judicial actor is better positioned than another to decide the issue in question.' " *Markman v. Westview Instruments, Inc.*, 517 U.S. at 388, 116 S.Ct. 1384 (quoting *Miller v. Fenton*, 474 U.S. 104, 114, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985)). In large measure, this assessment depends on the extent to which the issue is factual, so that "[i]n actions at law predominantly factual issues are in most cases allocated to the jury." *City of Monterey v. Del Monte Dunes*, 526 U.S. at 720, 119 S.Ct. 1624.

While the amount of punitive damages ultimately decided upon is not itself a historical or predictive fact, *Cooper Industries v. Leatherman Tool Group*, 532 U.S. at 437, 121 S.Ct. 1678, the determination of that amount nevertheless "is a fact-sensitive undertaking." *Id.* at 437 n. 11, 121 S.Ct. 1678. To arrive at this amount, the decisionmaker must make factual findings, inter alia, concerning the mental state with which the defendant acted, the presence and extent of any pattern of such behavior and of any prior sanction for the behavior, the defendant's contrition or defiance, the amount of harm suffered by the plaintiff, and such other matters as applicable law allows the decisionmaker to consider. The myriad factual issues on which an award of

---

evidence that juries historically had determined the amount of [such] civil penalties." *Id.* at 355, 118 S.Ct. 1279 (distinguishing *Tull*

*v. United States*, 481 U.S. 412, 107 S.Ct. 1831, 95 L.Ed.2d 365 (1987)).

punitive damages depends suggest the jury as the appropriate decisionmaker.

Moreover, the imposition of punitive damages "is an expression of ... moral condemnation." *Cooper Industries v. Leatherman Tool Group*, 532 U.S. at 432, 121 S.Ct. 1678. Jurors are well suited to the task of quantifying moral condemnation because they represent "the voice of the community," *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 600, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996)(Scalia, J., dissenting), the " 'passional elements in our nature.' " *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 344, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979)(Rehnquist, J., dissenting)(quoting O. Holmes, *Collected Legal Papers* 237 (1920)). *See also Markman v. Westview Instruments*, 517 U.S. at 389–90, 116 S.Ct. 1384 (the jury's "capabilities ... to reflect community standards," when significant to the decision at issue, weigh in favor of assigning the decision to the jury). The courts, as the dispassionate seat of reason, are better suited to reviewing awards of punitive damages to ensure that they accord with constitutional and other legal limitations.

In summary, the right-to-jury clause of the Seventh Amendment extends the right of trial by jury in this case to the determination of the amount of punitive damages, if any, to which the defendants may be entitled under their counterclaim for bad faith. The *Cooper Industries* decision does not alter this result. Hartford's motion to strike jury demand regarding punitive damages is **denied**.